**Opinion filed February 27, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00248-CV

_____

## IN THE INTEREST OF E.M., I.M., W.M., E.M., AND M.M., CHILDREN

**On Appeal from the 42nd District Court**
**Callahan County, Texas**
**Trial Court Cause No. 22430**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother (Appellant) to five of her children: E.M., I.M., W.M., E.M.2., and M.M.[1]  In a single issue, Appellant contends that the evidence is legally and factually insufficient to support the trial court's finding that terminating her parental rights is in the children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2024).

---

[1]We use initials to refer to the children.  *See* TEX. R. APP. P. 9.8(b).  Because two children have the same initials, we will refer to the younger child as "E.M.2." to avoid confusion.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. *Id.* § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the children. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal under Chapter 262 for abuse or neglect. *See id.* § 161.001(b)(1)(O). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed

2

facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). Courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child

relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally,

the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at \*3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

### The Evidence Presented at Trial

Appellant and the children's father were common-law married for eighteen years, and they had seven children together: K.M., L.M., E.M., I.M., W.M., E.M.2., and M.M. In October 2022, the Department received allegations of domestic violence between Appellant and the father, and physical abuse of the children. The father had been arrested for assaulting Appellant but claimed that it "was more pushing" and "shov[ing]" than any hitting. The father admitted that he and Appellant fought with each other in front of the children "a few times," and that he was "not proud of what [he] did." The Department initially attempted to avoid removing the children by providing Appellant and the father with family-based safety services (FBSS).[2]

In January 2023, due to Appellant's "drug abuse [and] serious domestic violence between [Appellant] and [the father]," the Department sought and was granted temporary managing conservatorship of the children. Following the full adversary hearing[3] on February 16, 2023, the trial court ordered Appellant to complete a substance abuse treatment assessment and "submit urine, hair, saliva, and/or blood samples, at times to be determined by the Department, for analysis by

---

[2]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department." 40 TEX. ADMIN. CODE § 700.710 (2021). The Department's Child Protective Services Division provides family-based safety services to families and children "to: (1) protect the children from abuse and neglect; (2) help the family reduce the risk of future abuse or neglect; and (3) prevent the removal of the children from their home." *Id.*

[3]*See* FAM. § 262.201.

a drug testing laboratory." The order further advised that the "failure to appear for or submit to a requested test" would be considered "the equivalent of a positive drug test." Meagan Davis, the permanency case manager, also notified Appellant that a failure to submit to required drug testing would be a "presumed positive."

On April 13, 2023, the trial court approved Appellant's Family Plan of Service, through which Appellant was ordered to complete counseling, parenting classes, a mental health assessment, and a psychological evaluation. Appellant was also required to maintain safe and stable housing, obtain and maintain legal employment and provide proof thereof, attend scheduled parent-child visitation, submit to random drug and alcohol screens through urine, oral, or hair follicles as requested by the Department, and test negative for all substances. Appellant completed her counseling requirements, parenting classes, a psychological evaluation, and a mental health assessment. However, Appellant did not consistently inform Davis where she was living, or of changes in phone number and employment. She only submitted to drug testing twice throughout the pendency of the case and ignored over twenty other directives to drug test. On September 27, 2023, she provided a hair sample that tested positive for methamphetamine and amphetamine. Following Appellant's positive drug test, her parent-child visitation was suspended. Despite Appellant knowing that "she would need three clean drug screens" for visits to resume, she refused to submit to drug testing until February 2024.

The father, on the other hand, "completed pretty much all of the services on [his] family service plan," including his drug screening requirements. His urinalysis drug tests were negative for all substances, but his hair follicle samples yielded positive results for methamphetamine on several occasions. Although the father attributed his positive test results to Appellant's methamphetamine use, the Department nonetheless halted the impending monitored return of the children to the

father. The Department encouraged the father to "leav[e] the home or figur[e] a way to get [Appellant] out of the home" because reunification "would not be safe with [Appellant] in the home." The father ultimately heeded that advice after continuing to test positive for methamphetamine—Davis heard the father say, "I am done with this," and that he chose his children.

Beginning in early 2024, the father endeavored to remove Appellant from the home. He obtained a fourteen-day "kickout order," changed the locks to the home, and initiated eviction proceedings. However, Appellant broke in on two separate occasions while the father was at work, "trashed the house," and left methamphetamine in the closet. The Department had previously begun a monitored return of L.M. to the father,[4] so L.M. was living at the home during Appellant's January 2024 break-in. The father was subsequently informed that he "doesn't have the right to legally evict [Appellant]" because she is a co-borrower on his mortgage loan.

The final hearing commenced on May 9, 2024, and was recessed until August 7, 2024. By then, E.M. was twelve years old, I.M. was ten, W.M. was seven, and the twins, M.M. and E.M.2., were five years old. The two older children involved in the separate suits, K.M. and L.M., were fourteen and fifteen, respectively. E.M. and I.M. were placed in a foster home in Brownwood, Texas, and W.M., M.M., and E.M.2. were placed in a foster home in Tuscola, Texas. Davis testified that "[t]hey're doing well" in their placements, and their caregivers arrange for the siblings to visit each other. The children's paternal grandfather who lives in Arizona is willing to adopt the children.

Davis and the father were the only two witnesses who testified at the termination hearing. Davis was concerned "that [Appellant] is still actively using"

---

[4]L.M. and K.M. were children involved in a separate action.

methamphetamine because she "will not drug test." Throughout the case, Davis instructed Appellant by text message and e-mail to drug test, but Appellant either ignored Davis's messages or gave an excuse for her noncompliance. For instance, Appellant demanded to be notified by e-mail before 5:30 a.m. due to her purported work schedule, and Davis accommodated that request. Even then, Appellant failed to submit to drug testing because "her position [was] she [did] not receive[] those e-mails." And according to the father, Appellant was not employed.

After the first day of trial recessed, the trial court ordered Appellant to "submit to an oral drug screen, a urine drug screen, and a hair follicle drug screen on May 9, 2024 . . . in Abilene, before close of business." Appellant did not comply with the trial court's order, and when trial resumed Davis testified:

> [Appellant] said . . . she didn't realize I had to give her the oral [drug screen] . . . [a]nd then she said her car broke down, but that her car made it home. And then she said she would go -- I asked her to go on the 13th of May and she did not go. I've also offered to transport her myself and she won't go."

The Department moved to enforce the trial court's order by contempt. The father also filed an application for a "permanent protective order" on behalf of himself and the children. Appellant did not appear on August 7 for the second day of trial, and "has been avoiding service" of the application for the protective order. Law enforcement attempted to serve Appellant at the father's home, but she "ran out the back, and jumped the fence."

When Appellant was instructed to report for drug testing at the end of June, she misrepresented that she was in Salt Lake City visiting her mother. Davis arranged for Appellant to be drug tested in Salt Lake City, but when she failed to do so, Davis confirmed with Appellant's mother that Appellant "never showed up to Salt Lake City." Davis again directed Appellant to submit to drug testing on July 10, 2024, but Appellant replied that she would either be in Fort Worth or Sherman,

Texas. Davis set up drug testing for Appellant in both cities, but Appellant never went to either location. On cross-examination by the father's attorney, Davis conceded that it is "because [Appellant] won't stay out" of the father's home that the children cannot return there.

The father explained that his relationship with Appellant has been extremely volatile in the past three years. According to the father, Appellant used methamphetamine "[o]n and off [their] whole relationship." He did not know until "probably about seven years in[] . . . when [he] finally caught her doing it." The father "can't even count" how many times he tried to help Appellant achieve sobriety, and "even told her [he] would do drug rehab with her . . . counseling . . . whatever it took." Appellant "would get clean for a while," but always reverted to methamphetamine use. The Department offered Appellant the opportunity to attend inpatient treatment, but she "never would sign the releases [to] . . . get the substance abuse assessment completed."

The last time Appellant saw her children in person was September 2023, and she did not appear for the second day of trial. E.M. and I.M. "do not desire to live in the same home" as Appellant, "and a lot of times don't desire to talk to her." Davis agreed that the "younger children really don't understand," so she cannot attest to their desires regarding termination of their relationship with Appellant. Davis testified that terminating Appellant's parental rights was in the children's best interest because:

> [Appellant has] not completed all the services on her family plan. We're pretty sure she's still actively using drugs. [The father] says she's using drugs, and that that's why he's testing positive. And [the home] would not be a safe environment for the children."

The trial court found by clear and convincing evidence that, despite the Department's "reasonable attempts at reunification," Appellant "continues to use

9

drugs to the point that it necessitates terminations for the children." The trial court further explained that Appellant being "in [the children's] lives, out of their lives," and causing "volatile situations . . . can't keep going on." The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(O) and found termination to be in the best interest of the children.[5] This appeal followed.

*Best Interest of the Children*

In Appellant's sole issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Appellant ignores the well-established law that evidence of each *Holley* factor is not required to support a best-interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Texas courts consistently recognize that the absence of evidence regarding some of these factors does not preclude a best-interest finding,

---

[5]The trial court denied the Department's petition to terminate the father's parental rights and granted him possessory conservatorship and in-person visitation upon negative urinalysis drug test results.

"particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)).

Evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the child's best interest. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28). Appellant does not challenge the trial court's finding that she failed to comply with the provisions of one or more court orders that specifically established the actions necessary for her to obtain the return of her children. *See* FAM. § 161.001(b)(1)(O). So long as the evidence supports that finding, it is binding on this court as a valid ground for termination. *See E.C.R.*, 402 S.W.3d at 249–50; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *J.S.*, 687 S.W.3d at 552; *In re J.G.*, 592 S.W.3d 506, 506 n.2 (Tex. App.—Waco 2019, no pet.). In this regard, the trial court could properly consider Appellant's failure to comply with her court-ordered service plan and additional court-ordered drug testing in assessing whether the termination of her parental rights was in the best interest of the children. *See E.C.R.*, 402 S.W.3d at 249–50; *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The clear and convincing evidence that Appellant failed to comply with court orders aimed at reunifying her with her children also established that terminating Appellant's parental rights was in the children's best interest. Most concerning was the evidence of Appellant's methamphetamine use, and her brazen disregard of drug-testing requirements. A parent's illegal drug use supports a finding that termination is in the children's best interest. *See, e.g.*, *In re C.S.*, No. 11-24-00186-

11

CV, 2024 WL 5080505, at *13–15 (Tex. App.—Eastland Dec. 12, 2024, no pet.) (mem. op.) (considering mother's unrepentant marihuana use in best-interest analysis) (citing *J.S.*, 687 S.W.3d at 554); *see also In re Z.B.*, No. 11-24-00061-CV, 2024 WL 3995522, at *1 (Tex. App.—Eastland Aug. 30, 2024, no pet.) (mem. op.). That is because persistent drug use by parents poses infinite potential dangers to their children. *See, e.g.*, *In re E.D.*, 682 S.W.3d 595, 607 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *E.C.R.*, 638 S.W.3d at 768 ("A parent's drug use supports a finding that termination of parental rights is in the best interest of the child."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child."). The Texas Supreme Court recently reiterated that a parent's continuing pattern of drug use can support a finding of endangerment, which in turn supports a best-interest finding, due to the "attendant risks to employment, housing, and prolonged absence from the children." *In re R.R.A.*, 687 S.W.3d 269, 281 (Tex. 2024).

A parent's refusal to submit to drug testing permits the inference that he or she is continuing to abuse drugs, which is properly considered in determining whether termination is in the children's best interest. *See In re I.E.P.*, No. 04-24-00255-CV, 2024 WL 3802517, at *3–4 (Tex. App.—San Antonio Aug. 14, 2024, no pet.) (mem. op.) ("drug use can destabilize the home and expose children to physical and emotional harm if not resolved"); *see In re F.T.*, No. 07-24-00205-CV, 2024 WL 4692125, at *4 (Tex. App.—Amarillo Nov. 5, 2024, no pet.) (mem. op.) (mother's failures to appear for several drug tests were considered positive results); *In re Z.G.*, No. 02-23-00038-CV, 2023 WL 3521848, at *4 (Tex. App.—Fort Worth May 18, 2023, pet. denied) (mem. op.) ("[E]vidence of past drug use and a refusal to submit to drug testing supports a finding that the parent has endangered the child's

emotional and physical needs and posed a danger to the child. . . .  And as to future drug use, a factfinder may measure a parent's future conduct by his past conduct."); *In re O.G.H.D.*, No. 09-21-00172-CV, 2021 WL 4466002, at *9, *12 (Tex. App.—Beaumont Sept. 30, 2021, no pet.) (mem. op.) (considering a parent's failure to comply with drug testing requirements in best-interest analysis).  The trial court could therefore reasonably infer that Appellant avoided drug testing because she was using drugs, a pattern of which "implicates most of the *Holley* factors."  *E.D.*, 682 S.W.3d at 607; *see also In re N.J.H.*, 575 S.W.3d 822, 834–36 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (father's history of drug use and continued drug use during case bore on second, third, fourth, and seventh *Holley* factors—child's emotional and physical needs, emotional and physical danger to the child, father's parental abilities, and stability of the home—thus supporting the best-interest finding).

Despite Davis's efforts to accommodate Appellant's numerous misrepresentations of travel plans, transportation issues, and work schedule, Appellant circumvented all but two required drug screens.  Appellant's obstinance in avoiding required drug testing suggests that Appellant never addressed her illegal drug use and was unwilling or unable to meet the children's emotional and physical needs.  *See In re K-A.B.M.*, 551 S.W.3d 275, 289 (Tex. App.—El Paso 2018, no pet.).  By her own actions, the trial court could rationally infer that Appellant chose to continue drug use rather than regain in-person visitation with her children, as September 2023 was the last time she saw them. Such "significant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in [the] child[ren]'s best interest."  *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.).  And E.M. and I.M. had no desire to see or speak to Appellant.  The evidence strongly suggests Appellant's

parental indifference and inability to adequately parent her children, which supports the conclusion that the parent-child relationship is not an appropriate one. *See Holley*, 544 S.W.2d at 372.

Moreover, Appellant's partial compliance with her service plan was insufficient to alleviate the Department's and trial court's rational concerns that her drug problems remained. She tested positive for methamphetamine while participating in counseling and parenting courses, broke into the father's home at least twice, and left methamphetamine in the home. She also failed to provide proof of employment after December 2023, and failed to inform Davis of her living situation. Appellant likewise refused the Department's offer to provide inpatient substance abuse treatment. *See E.C.R.*, 402 S.W.3d at 249 (a parent's failure to complete court-ordered services can support best-interest finding). "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). As such, Appellant's continued failure to utilize the available programs or regularly visit the children demonstrates that she lacked the motivation or willingness to promote the well-being of the children. *See Holley*, 544 S.W.2d at 372.

Further, Appellant did not appear for the second day of the final hearing. When a parent is absent from termination proceedings without a valid explanation, "the factfinder may reasonably infer that the parent is indifferent to the outcome," which supports a finding that termination is in the children's best interest. *A.J.D.-J.*, 667 S.W.3d at 826; *In re A.V.G.-P.*, No. 10-23-00294-CV, 2024 WL 1327908, at *4 (Tex. App.—Waco Mar. 28, 2024, no pet.) (mem. op.). Because Appellant forfeited participation in legal proceedings where her parental rights were

at stake, she could be presumed to lack the interest, ability, and desire to be involved in her children's lives. *See A.V.G.-P.*, 2024 WL 1327908, at *4.

As to the plans for the children and the stability of the home or proposed placement, the evidence showed that the children's paternal grandfather was willing to adopt them. The father was also willing to move to Arizona to be with the children. While this plan was not solidified by the final termination hearing, a "lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor." *J.S.*, 687 S.W.3d at 553 (quoting *C.H.*, 89 S.W.3d at 28). "Otherwise, terminations would regularly be subject to reversal on the sole ground that 'an adoptive family has yet to be located.'" *Id.* (quoting *C.H.*, 89 S.W.3d at 28); *see also In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The children's current caregivers in their respective placements are providing them with an environment and structure in which they can succeed until the grandfather and father finish arranging a safe, permanent home. Appellant has not provided her children with a safe, drug-free home environment—to the contrary, the trial court was reasonably concerned that Appellant would continue to expose the children to violence and drugs were they returned to her care. *See In re A.V.*, No. 11-23-00144-CV, 2023 WL 8631492, at *8 (Tex. App.—Eastland Dec. 14, 2023, no pet.) (mem. op.).

Appellant not only prioritized drug use over her own relationship with her children; her actions interfered with the children's desires to be with their father. Appellant left the trial court little choice but to find that terminating her parental rights is in the best interest of the children. The evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the order of the trial court.


W. BRUCE WILLIAMS

JUSTICE


February 27, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.